IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CLARENCE J. RUTLAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Act. No.: 2:13-cv-470-WKW-TFM |
| | ) | [wo] |
| IKE HARRIS, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b)(1) this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law (Doc. 21, filed July 19, 2013). Pending before the Court is Defendant's *Motion to Dismiss* (Doc. 35, filed December 31, 2013). The Court has carefully reviewed the Motion to Dismiss, the brief filed in opposition to the Motion (Docs. 35, 38) and the supporting and opposing evidentiary materials. For good cause, it is the RECOMMENDATION of the Magistrate Judge that the Defendant's Motion be GRANTED.

### I. JURISDICTION

The district court has subject matter jurisdiction over the claims in this 42 U.S.C. § 1983 (Civil Rights Act of 1871, as amended) action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.

## II. STANDARD OF REVIEW

Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, the court must indulge reasonable inferences in plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal*, 556 U.S. at 680, 129 S. Ct. at 1951 (stating conclusory allegations are "not entitled to be assumed true").

A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face. *See Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (explaining "only a complaint that states a plausible claim for relief survives a motion to dismiss"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561-62, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (retiring the prior "unless it appears beyond doubt that the plaintiff can prove no set of facts" standard). In *Twombly*, the Supreme Court emphasized that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (internal citations and emphasis omitted).

More recently, in *Iqbal*, the Supreme Court reiterated that although FED. R. CIV. P. 8 does not require detailed factual allegations; it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss. *Id.* The well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### III.  BACKGROUND

The Court accepts as true all relevant facts set forth by the Plaintiff in his Amended Complaint (Doc. 4) and supplemental Statement of Facts (Doc. 18 at 3-6). As best as this Court can discern, this 42 U.S.C. § 1983 action arises out of a single incident which led to Plaintiff's two separate claims.

Clarence J. Rutland ("Rutland" or "Plaintiff") states that he is a lifelong diabetic that requires daily medication to control his condition. *See* Doc. 1 at 5. In or around May 2011, Correctional Officer Ike Harris ("Harris" or "Defendant") was in charge of the "pill call" line for distribution of prescribed medication to the inmates at Kilby Correctional Facility. *See* Doc. 18 at 3. Pill distribution was running behind schedule, and Rutland was forced to stand for an extended period of time causing medical problems with his feet related to his diabetes. *Id.* Rutland informed Harris that he is diabetic, to which Harris responded "shut the f*** up, I'm running this pill call line." *Id.*

After an hour long wait, Rutland reached the nurse's counter and stood side-by-side with another inmate. *See* Doc. 18 at 4. After both Rutland's and his fellow inmate's medication had been placed on the counter, an incident occurred with the other inmate and Harris told him to leave the window. *Id.* Harris then picked up one of the cups containing medication and handed it to Rutland. *Id.* Harris told Rutland to swallow them. *Id.* Rutland noticed that the medication did not look like his regular diabetes medication, but he took it as Harris instructed without objection. *Id.* Within five minutes Rutland became ill. *Id.*

Rutland went to the lunch room, but he was unable to eat and nearly lost consciousness. *See* Doc. 18 at 4. Since Rutland felt sick, he attempted to leave the lunch room; however, he was stopped by Harris who said "haa motherf***er where the f*** you think you going." *See* Doc. 18 at 5. Rutland did not respond because he was "extremely sick." *Id.* Harris took Rutland to the warden for "insubordination" and for being "extremely loud." *Id.* Although the circumstances are unclear, Rutland claims that due to this false disciplinary action taken against him, he was placed in segregation at some point in 2012. *See* Doc. 4 at 5.

Rutland claims that Harris violated his constitutional rights by acting with a deliberate indifference to his medical needs and for false disciplinary actions taken against him. *See* Doc. 18 at 8. Rutland requests one million dollars in punitive damages and compensatory damages for his pain and suffering.

## IV. DISCUSSION AND ANALYSIS

Harris argues that the case is due to be dismissed because the Rutland has failed to state a claim on which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Doc. 35 at 1.

### A. Deliberate Indifference to Medical Needs

First, Harris argues that this case is due to be dismissed because Rutland has failed to establish a valid claim for deliberate indifference. *See* Doc. 35 at 2. Harris argues that to state a valid claim for deliberate indifference, Rutland must show that "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Id.* (quoting *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) (citations omitted)). Harris asserts that the best factual scenario Rutland has established is that "Defendant Harris, seeing pills in the pill call window and seeing Rutland next in line, believed Rutland to be taking unnecessarily long and ordered him to take what he thought medical staff had dispensed as Rutland's medication." *See* Doc. 35 at 3. Rutland, however, asserts that Harris' actions were intentional. *See* Doc. 38 at 6.

Medical personnel may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not

'respond[] reasonably to the risk.' *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1982-83, 128 L.Ed.2d 811 (1994). A plaintiff must also show that the constitutional violation caused his injuries." *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc).

In *Farmer*, the Court identified both objective and subjective elements necessary to establish an Eighth Amendment violation. With respect to the requisite objective elements, an inmate must first show "an objectively substantial risk of serious harm ... exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh*, 268 F.3d 1028-1029. As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference [. . .]. The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' [. . .] [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-838; *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. [. . .] It is *obduracy and wantonness, not inadvertence or error in good faith*, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with

establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (emphasis added).

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that the defendant acted with deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986). Specifically, correctional personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Mandel v. Doe*, 888 F.2d 783, 787 (11th Cir. 1989). When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner). Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and

ignore known risk to serious condition to warrant finding of deliberate indifference). Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).

As is relevant to the present complaint, Rutland claims that Harris forced him to take another inmate's medication that, in turn, made him very ill. However, Rutland admits that not only did he know the medication was not his own, but he did not bring it to the attention of Harris or the nurse that was present at the time, but rather took the medication upon being instructed. Rutland only alleges that upon reaching the nurse's window with another inmate, the other inmate was sent away after failing to follow instructions, and Harris grabbed the medication that was on the counter and told Rutland to swallow them.[1] *See* Doc. 18 at 4. Rutland's allegations, taken as the truth, do not establish Harris' actual knowledge, either subjectively or objectively, that the medication was not meant for Rutland. As previously mentioned, the conduct at issue "must involve

---

[1] Rutland alleges several times that these actions amount to Harris putting himself into the role of a pharmacist despite not being licensed. *See* Doc. 28 at 2-3. However, Rutland's previous statements make clear that there was a nurse at the window who dispensed the medication and placed them on the window as each inmate approached. Harris simply handed the medication that was dispensed by the nurse to each inmate. This argument clearly fails.


more than ordinary lack of due care for the prisoner's interests or safety. [. . .] It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause [. . .]." *Whitley*, 475 U.S. at 319.

Not only has Rutland failed to claim that Harris had actual knowledge; Rutland has also failed to show that there was objectively a substantial risk of serious harm. Rutland has alleged nothing more than the fact that he felt nauseous and faint. There is no assertion that he was hospitalized or that the side effects of the incorrect medication caused anything more than an uneasy feeling for the rest of the afternoon. More importantly, Rutland has failed to allege a plausible claim demonstrating that Harris subjectively knew that there was a substantial risk of serious harm present by instructing Rutland to take the medication that was placed on the counter.[2]

Rutland fails to state a valid claim for which relief can be granted with respect to his claim that Harris acted with deliberate indifference to his medical needs. Specifically, the Complaint and supplemental submissions do not indicate that the defendants had knowledge of specific facts from which an inference could be drawn that a substantial risk of harm existed to Rutland, that the defendant actually drew this inference and thereafter ignored the risk. Rutland has, therefore, failed to establish each of the requisite elements of his deliberate indifference claim. *Carter*, 352 F.3d at 1350. Consequently,

---

[2] Rutland even acknowledges that Harris must have assumed that Rutland's fellow inmate took his own medication with him when Harris told him to leave the line. *See* Doc. 18 at 5. Then, assuming the medication that was on the counter was meant for Rutland, Harris picked them up, handed them to Rutland, and told him to swallow them. *Id.*

the defendant's motion to dismiss Rutland's deliberate indifference to medical needs claim is due to be GRANTED.

## B.     False Disciplinary

The complaint in this case is not a model of clarity, and from the best this Court can discern, after having ingested the aforementioned medication and becoming ill, Rutland was sent into the lunch room to eat lunch.  Rutland states that he was unable to eat and felt nauseous so he attempted to leave the lunch room.  Harris stopped Rutland and said "haa motherf***er where the f*** you think you going."  *See* Doc. 18 at 5.  Rutland did not respond because he was "extremely sick."  *Id.*  Harris took Rutland to the warden for "insubordination" and for being "extremely loud."  Although this incident took place in May of 2011, Rutland alleges that it caused him to be placed in segregation in an unspecified date in 2012.  *See* Doc. 4 at 5.  Rutland alleges that the disciplinary actions taken against him were false and his placement in segregation amounted to torture.

The Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required.

> The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. *See Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital).  The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of

> prison life.' *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory 'good-time credits' without due process); *cf. Dudley v. Stewart,* 724 F.2d 1493, 1497-98 (11th Cir.1984) (explaining how the state creates liberty interests). In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state.

*Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement. *Sandin*, 515 U.S. at 485-486 (disciplinary confinement of inmate in segregation does not implicate a constitutionally protected liberty interest); *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005) ("The punishments [an inmate] suffered because of his disciplinary conviction (demotion in status, segregation, and transfer) raise no due process concerns."); *see also Meachum v. Fano*, 427 U.S. 215, 225, 96 S. Ct. 2532, 2538, 49 L. Ed. 2d 451 (1976) (No liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose."); *Olim v. Wakinekona*, 461 U.S. 238, 245-46, 103 S. Ct. 1741, 1745, 75 L. Ed. 2d 813 (1983) (prisoner has no constitutional right to be confined in a particular institution).

Moreover, an inmate in the Alabama prison system has no constitutionally protected interest in the privileges bestowed upon him or confinement in the least restrictive prison environment because the resulting restraints are not so severe that they exceed the sentence imposed upon him. *Sandin*, 515 U.S. at 485 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law."). In addition, a temporary denial of privileges does not impose an "atypical

and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Thus, the deprivations imposed upon Rutland did not "exceed the sentence [imposed by the trial court] in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Id*. This court must therefore determine whether the actions about which Rutland complains involve the deprivation of a state-created liberty interest as defined by the standard set forth in *Sandin*.

>As the Supreme Court opined:
>
>*Sandin* involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior. *Sandin* observed that some of our earlier cases, *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation." *Sandin,* 515 U.S., at 481, 115 S.Ct. 2293. In *Sandin,* we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons. *Id.,* at 482-483, 115 S.Ct. 2293. For these reasons, we abrogated the methodology of parsing the language of particular regulations.
>
> "[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established in and applied in *Wolff* and *Meachum.* Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.,* at 483-484, 115 S.Ct. 2293 (citations and footnote omitted).
>
>After *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the ordinary incidents of prison life." *Id.,* at 484, 115 S.Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. 209, 222-223, 125 S.Ct. 2384, 2393-2394 (2005).

Applying the *Sandin* inquiry, it is clear that Rutland's false disciplinary claim does not entitle him to any relief. Rutland's written disciplinary and subsequent placement in the segregation unit the following year which included temporary loss of canteen, telephone and visitation privileges and short-term confinement in disciplinary segregation "though concededly punitive, do[] not represent a dramatic departure from the basic conditions" of the sentence imposed upon the plaintiff.[3] *Sandin,* 515 U.S., at 485, 115 S.Ct. 2293. In light of the foregoing, it is clear that the aforementioned actions fail to "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Rutland fails to state a valid claim upon which relief can be granted. Consequently, the defendant's motion to dismiss Rutland's false disciplinary claim with respect to the imposition of disciplinary action against him and his placement in segregation is due to be GRANTED.

## V. CONCLUSION

Accordingly, it is the **RECOMMENDATION** of the Magistrate Judge as follows:

(1)   The Defendant's *Motion to Dismiss* (Doc. 35) be **GRANTED**;

(2)   Plaintiff's claims against Ike Harris be **DISMISSED** with prejudice; and

(2)   Any outstanding motions be **DENIED** as moot.

It is further **ORDERED** that the parties are **DIRECTED** to file any objections to this Recommendation on or before **June 10, 2014.** Any objections filed must specifically

---

[3] The facts as presented by Rutland only establish that he attempted to leave the lunch room because he felt ill, was stopped by Officer Harris who asked where he was going, Rutland did not respond, continued to leave the lunch room, and as a result was taken to the warden for "insubordination."

identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 27th day of May, 2014.

/s/Terry F. Moorer
TERRY F. MOOREr
UNITED STATES MAGISTRATE JUDGE